| | |
|---|---|
| **DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO**<br><br>1437 Bannock Street<br>Denver, CO 80202<br>(720) 865-8301 | EFILED Document<br>CO Denver County District Court 2nd JD<br>Filing Date: May 20 2011 10:21AM MDT<br>Filing ID: 37707571<br>Review Clerk: Sherie Aragon<br><br>▲**COURT USE ONLY**▲ |
| **Plaintiff:** Christopher Arnold<br><br>v.<br><br>**Defendant:** CIGNA Corporation, d/b/a CIGNA Group Insurance, a Delaware corporation; and Life Insurance Company of North America, a Pennsylvania corporation. | Case Number:<br><br>Ctrm.: |
| ***Attorneys for Plaintiff***<br>Bradley A. Levin, Atty. No. 13095<br>Zachary C. Warzel, Atty. No. 36546<br>**ROBERTS LEVIN ROSENBERG PC**<br>1660 Wynkoop, Suite 800<br>Denver, Colorado 80202<br>Phone Number: 303-575-9390<br>Fax Number: 303-575-9385<br>bal@robertslevin.com<br>zcw@robertslevin.com | |
| **COMPLAINT AND JURY DEMAND** | |

Christopher Arnold ("Mr. Arnold"), by and through counsel, Roberts Levin Rosenberg PC, for his Complaint against Defendants, CIGNA Corporation, d/b/a CIGNA Group Insurance ("CIGNA") and Life Insurance Company of North American ("LINA"), states as follows:

## PARTIES & JURISDICTION

1. Mr. Arnold is a resident of Jefferson County, Colorado.

2. Defendant CIGNA Group Insurance, on information and belief, is a registered service mark and refers to an operating subsidiary of CIGNA Corporation, a Delaware corporation with its principal place of business in Pennsylvania. On information and belief, CIGNA is authorized to conduct business in Colorado.

**EXHIBIT**

**A**

3. Defendant LINA, on information and belief, is a Pennsylvania corporation with its principal place of business in Pennsylvania, and is an operating subsidiary of CIGNA Corporation. On information and belief, LINA is authorized to conduct business in Colorado.

4. The court has personal jurisdiction over CIGNA and LINA pursuant to the Colorado long-arm statute, C.R.S. § 13-1-124(a) and (b).

5. This court has subject matter jurisdiction over all claims asserted herein and personal jurisdiction over all parties.

6. Venue is proper in this district pursuant to Colo. R. Civ. P. 98(c), which Plaintiff designates as the place of trial of this action.

## GENERAL ALLEGATIONS

7. Mr. Arnold has been a Staff Database Engineer at Lockheed Martin Corporation for over 21 years.

8. In October 2005, while on a business trip to Las Cruces, and White Sands Air Force Base, New Mexico, Mr. Arnold contracted Coccidioidomycosis, a dangerous and life-threatening fungal infection colloquially known as "Valley Fever" or "Desert Fever."

9. Coccidioidomycosis is an infection caused by inhaling the microscopic spores of the fungus Coccidioides immitis.

10. The fungus is found in limited areas of the dry desert soil of the southwestern United States, Mexico, and Central and South America.

11. Coccidioidomycosis exists in three distinct forms. The primary form of the infection, post-inhalation of the spores, is typically limited to the lungs and sinuses. The symptoms are similar to influenza and, outside of the endemic areas of the fungus, it is commonly miss-diagnosed as influenza. This stage is the most treatable, but it is critical that treatment be administered within three to four months after initial infection to limit its spread throughout the body. While in the lungs, the fungus can cause inflammation, fluid buildup, and lesions that can leave permanent scarring.

12. The systemic infection occurs as the fungal spores breach the lining of the lungs and are carried throughout the body. In this stage, the infection can lay dormant or asymptomatic for up to 20 years. Once the infection becomes systemic, it is considered to be chronic and incurable. The systemic form is measured via the blood titer (fungal concentration in the blood).

13. The disseminated form of the disease occurs when the fungus takes up residence in body tissues outside of the lungs and sinus (*i.e.*, organs, bones, skin, etc.). This form of the disease requires life-long treatment. If not properly controlled, the disseminated form of the

disease leads to meningitis, which is typically fatal within 30 to 60 days.

14. Symptoms of the disseminated form of the disease include fever, joint pain, loss of appetite, weight loss, night sweats, skin lesions, and difficulty breathing. Meningitis may also occur as a result.

15. The disseminated form of the disease is treated with powerful fungistatic drugs that carry significant, and toxic, side effects.

16. After his exposure to the fungus in 2005, Mr. Arnold initially experienced flu-like symptoms consistent with the primary stage of the disease.

17. Mr. Arnold fought off the initial infection, but, unfortunately, did not receive treatment to prevent the spores from spreading and becoming the systemic form of the disease.

18. Mr. Arnold's symptoms returned in the fall of 2006 but, unfortunately, the cause of Mr. Arnold's maladies was not diagnosed as Coccidioidomycosis until March 2007 when he underwent emergency surgery for debridement of the infection in his right ankle.

19. By the time the infection was correctly diagnosed, it had spread throughout Mr. Arnold's body and become the chronic, disseminated form of the disease, with heavy concentrations in the bone and surrounding tissues of his right ankle.

20. As a result of his illness, Mr. Arnold has suffered liver damage; nerve damage, primarily in his right leg, groin, lower intestinal area, and upper left leg, which causes constant severe burning pain for which he is required to take nerve blockers, strong narcotic painkillers, and other medications; damage to his ankle joint from the localized infection; frequent stabbing pains, throbbing, swelling, and sensory displacement caused by frequent invasive surgeries on his right ankle, for which he is required to take strong narcotic painkillers and other medications; chronic fatigue which requires Mr. Arnold to take medications; and other serious conditions.

21. Mr. Arnold became unable to work full-time as a result of his disease in March 2007 when he spent a week in the hospital following his initial surgery, followed by two months of full-time outpatient care and multiple daily intravenous treatments.

22. Following Mr. Arnold's initial convalescence from his surgery, he returned to work at approximately quarter-time duty for several months while undergoing physical therapy and weekly medical appointments.

23. Mr. Arnold then increased to half-time duty, and has never been able to sustain work beyond half-time due his condition and the side-effects of his medications.

24. To treat his disease, Mr. Arnold has been placed on powerful fungistatic drugs.

25. There are only three medication options to control the disease that do not require

hospitalization – Fluconazole, Itraconazole, and Pozaconazole.

26. Mr. Arnold has experienced significant difficulty tolerating the side-effects of the "azole" class of drugs, particularly Fluconazole and Itraconazole, which have caused severe body rashes, severe nosebleeds that have required multiple visits to the emergency room, severe neutropenia (low white blood cell count), fevers, severe fatigue, headaches, dizziness, and gastrointestinal issues including stomach aches, cramps, reflux, and diarrhea.

27. The medications Mr. Arnold takes to treat the infection cause serious stomach upset, reflux, and severe gastrointestinal cramping, which in turn requires the use of additional medications to treat the side effects.

28. Due to his intolerance of Fluconazole and Itraconazole, Mr. Arnold's physicians have prescribed the final medication option available to him without the need for hospitalization, Pozaconazole.

29. While he has had no choice but to suffer through the side effects of his medications, the treatment has rendered him disabled as a result.

30. As a result of his condition and the side-effects of his medications, Mr. Arnold continues to regularly experience bloody noses, low grade fevers, heat flashes, headaches, an array of gastrointestinal problems, dizziness, blurred vision, weight management problems, full body rashes, constant burning and/or tingling in his legs and groin, varying degrees of pain and discomfort in the right ankle, and relentless fatigue.

31. Mr. Arnold is regularly required to sleep for excessive periods of time, often for more than 18 hours, as a result of his condition and the side-effects of his medications.

32. Currently, and at the time CIGNA/LINA terminated Mr. Arnold's LTD claim, his blood tests, including his white blood cell counts and his infection titer, fluctuate from week to week and month to month.

33. If in the future Mr. Arnold cannot tolerate the Pozaconazole or the other "azoles," or they stop working effectively, he will need to be put on anti-fungal medications requiring hospitalization.

34. If not controlled by fungistatic drugs, Mr. Arnold's illness would lead to meningitis and then death in a short period of time.

35. As a result of his illness, Mr. Arnold has been given permanent work restrictions by his physicians of no more than 20 hours per week.

36. Lockheed Martin has accommodated Mr. Arnold's reduced work schedule to date.

37. In a typical week, Mr. Arnold works up to 20 hours per week, but often struggles

to maintain even this reduced schedule.

38. At all relevant times, Mr. Arnold was insured under a long term disability ("LTD") insurance policy issued by LINA/CIGNA to his employer, Lockheed Martin, Policy Number LK8348 (the "Policy").

39. After approval for, and receipt of, short term disability benefits for a period of approximately 10 months, Mr. Arnold applied for LTD benefits under the Policy.

40. CIGNA/LINA approved Mr. Arnold's LTD claim in early 2008. Mr. Arnold received disability benefits under the Policy until June 16, 2009.

41. On June 16, 2009, CIGNA/LINA terminated Mr. Arnold's claim for LTD benefits, claiming that he no longer met the Policy's definition of "Disability."

42. Mr. Arnold appealed CIGNA/LINA's termination decision by letter dated October 9, 2009, at which time be provided additional medical evidence supportive of his claim for LTD benefits.

43. CIGNA/LINA affirmed the termination of Mr. Arnold's claim on January 26 2010, again insisting that the medical evidence did not support his inability to work full time after June 16, 2009.

44. Mr. Arnold was, and continues to be, disabled under the terms of the Policy, and CIGNA/LINA's termination decision was incorrect, unreasonable, and arbitrary and capricious.

45. All conditions precedent to coverage under the Policy have been fulfilled or otherwise waived by CIGNA/LINA's unreasonable conduct.

## FIRST CLAIM FOR RELIEF
## (VIOLATION OF 29 U.S.C. § 1132(a)(1)(B))

46. Mr. Arnold incorporates by reference paragraphs 1 through 45 of this Complaint as if fully set forth herein.

47. Mr. Arnold brings this claim under 29 U.S.C. § 1132(a)(1)(B).

48. CIGNA/LINA's termination of LTD benefits was unreasonable, arbitrary, and capricious as it was not based upon a correct application of Policy language.

49. CIGNA/LINA failed to provide a full and fair review of Mr. Arnold's LTD claim.

50. CIGNA/LINA's handling of Mr. Arnold's LTD claim was attended by serious procedural irregularities.

51. CIGNA/LINA conducted a wholly inadequate investigation into Mr. Arnold's

medical condition prior to denying his LTD claim.

52. CIGNA/LINA ignored readily available information which confirmed Mr. Arnold's entitlement to LTD benefits.

53. CIGNA/LINA was operating under an inherent conflict of interest in adjusting Mr. Arnold's claim for LTD benefits as both payor and administrator of the claim.

54. Pursuant to 29 U.S.C. § 1132(a)(1)(B), Mr. Arnold is entitled to recover long-term disability benefits due under the terms of the Policy.

55. Pursuant to 29 U.S.C. § 1132(g), Mr. Arnold is also entitled to an award of reasonable attorneys' fees and costs incurred in bringing this action.

**PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff, Christopher Arnold, respectfully prays for judgment against defendants upon each and all of the claims for relief asserted herein above, including and without limitation:

a. For recovery of all long-term disability benefits due under the terms of the Policy;

b. For all pre- and post-judgment interest as allowed by law;

c. For reasonable attorneys' fees and costs of suit herein; and

d. For such other and further relief as the Court deems just and proper.

**PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

**DATED** this 20th day of May 2011.

Respectfully submitted,

**ROBERTS LEVIN ROSENBERG PC**

*/s Zachary C. Warzel*
Bradley A. Levin
Zachary C. Warzel

**Plaintiff's Address:**
23748 Inca Rd.
P.O. Box 653
Indian Hills, CO 80454